F101 JUDGE LYNCH

09 CV 6009

Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Plaintiff
ARGUS DEVELOPMENT INC.
494 Eighth Avenue 7th Floor
New York, New York 10001
Telephone: (646) 328-0120
Facsimile:  (646) 328-0121
William R. Bennett, III (WB 1383)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ARGUS DEVELOPMENT INC.,                                09-CV-

                      Plaintiff,

                                                       **VERIFIED COMPLAINT**

        -against-

STEELCORE TRADING LIMITED
and 000 NOVOROSMETALL,

                      Defendants.

------------------------------------------------------------------------x

   Plaintiff, ARGUS DEVELOPMENT INC., by its attorneys, Bennett, Giuliano, McDonnell & Perrone, LLP, complaining of the Defendants, STEELCORE TRADING LIMITED and 000 NOVOROSMETALL, herein, alleges upon information and belief as follows:

   1.  This is a case of Admiralty and Maritime jurisdiction, as hereinafter more fully appears, and is an Admiralty and Maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

   2.  At all times hereinafter mentioned, Plaintiff, ARGUS DEVELOPMENT INC. (hereinafter referred to as "ARGUS") was, and now is, a corporation or other business entity duly organized and existing under and by virtue of the laws of Delaware, with an office and principal place of business in Delaware.

3. At all times material hereto, defendant STEELCORE TRADING LIMITED (hereinafter referred to as "STEELCORE"), was, and still is, a corporation or other business entity organized and existing under the laws of a foreign country with a principal place business located in Belmopan, Balize.

4. At all times material hereto, defendant OOO NOVOROSMETALL (hereinafter referred to as "NOVOROSMETALL"), was, and still is, a corporation or other business entity organized and existing under the laws of a foreign country with a principal place business located at Novorossiysk, Russia.

5. On or about April 12, 2008, Argus and Steelcore entered into a maritime contract commonly referred to as a contract of affreightment (herein referred to as the "COA") in which Steelcore was to ship via ocean going vessel to Argus several shipments of Russian steel billets. *A Copy of the COA is attached hereto as Exhibit 1.*

6. Novorosmetall was the guarantor of the COA on behalf of Steelcore.

7. On 18 June 2008, Argus agreed to buy and the Respondent Steelcore agreed to sell 10,000 MT +/-5% of prime steel billets, manufactured by Novorosmetall.

8. Pursuant to the delivery time of the COA, the steel billets were to be loaded at Novorossiysk by 20 July 2009 at the latest.

9. The COA required Steelcore to send Argus written notification (by fax or email) about the quantities of steel billets available for shipment indicating the number of bundles and gross weight.

10. The Shipping Terms in the COA also required Steelcore to submit to Argus a 15 day approximate notice of cargo readiness and to advise of the final date of readiness of the cargo for loading.

11. The terms of the COA including numerous maritime obligations to be performed by Steelcore, including but not limited to, providing a safe berth, payment of demurrage if incurred, loading of cargo, and payment of wharfage fees.

12. As a guarantor, Novorosmetall guaranteed the obligations of Steelcore under the COA and in the event of a default by Steelcore and Novorosmetall would be liable to Argus for such default.

13. On 12 August 2008, Steelcore, refused to release the goods for loading onto the M/V "QUEEN HAJA", a vessel nominated by Argus for shipment of the goods.

14. 4,989.840 metric tonnes of the goods were eventually released to Argus and shipped on board M/V "ANITTEPPE S" on 19 August 2008 and a further 1,696.516 metric tonnes were released to Argus and shipped on board M/V "KOCLAR 5" on 4 September 2008.

15. On 9 September 2008, and again on 10 September 2008, Argus sent Steelcore notice of its nomination of M/V 'HACI RUSTU K" for shipment of the balance of 2,822.420 metric tonnes. On 17 September 2008, Argus notified Steelcore again of its vessel nomination. Steelcore, refused to release the goods to Argus. Pursuant to the COA, Argus chartered several vessels.

16. As a result of Steelcore's breach of the Maritime COA, Argus suffered damages including but not limited to demurrage, freight and damage to cargo.

17. Novorosmetall as guarantor is liable to Argus for Steelcore's breach of contract.

18. This action is brought *inter alia* pursuant to 9 U.S.C. § 8 in order to obtain security for plaintiff claims made or to be made in another jurisdiction.

19. Argus commenced arbitration pursuant to the terms of the contract.

20. In all, the claim for which Argus sues for breach of the maritime contract, as near as presently may be estimated, totals $979,985.72, no part of which has been paid by Steelcore.

Argus specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure plaintiff.

21. Steelcore routinely does business in U.S. Dollars and through New York financial institutions.

22. Specifically, Steelcore is demanding payment through New York financial institution including, but not limited to, i.e., JP Morgan and BNP Paribas. All payment were to be made in U.S. Dollars.

23. Upon information and belief, and after investigation, defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but defendants will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of defendants (collectively hereinafter, "ASSETS"), including but not limited to in its name and/or being transferred for its benefit funds, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein because defendant conducts business internationally in US Dollars and all electronic fund transfers are processed by intermediary banks in the United States, primarily New York.

24. The total amount sought to be attached pursuant to the above is US $979,985.72.

**WHEREFORE,** Plaintiff prays:

1. That process in due form of law according to the practice of this Court may issue against defendants citing them to appear and answer the foregoing;

2. That if defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of defendants up to and including US $979,985.72 be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, frights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of defendants, including but not limited to assets in its name and/or being transferred for its benefit, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein, including, but not limited to, ABN AMRO Bank, American Express Bank, Bank Leumi USA, Bank of America, N.A., Bank of China, Bank of New York, Bank of Tokyo –Mitsubishi JFJ Ltd., Barclays Bank, BNP Paribas, Citibank, N.A., Deutsche Bank USA, Fortis Bank, HSBC Bank USA, N.A., JP Morgan Chase Bank, N.A., Malayan Banking Berhad, Overseas Chinese Banking Corporation, United Overseas Bank, and Wachovia Bank, N.A.

3. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the defendant in the foreign proceedings; and,

4. For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       June 30, 2009

                                       Bennett, Giuliano, McDonnell & Perrone, LLP
                                       Attorneys for Plaintiff
                                       ARGUS DEVELOPMENT INC.

[signature]

William R. Bennett, III  
494 Eighth Avenue, 7th Floor  
New York, New York 10122  
Telephone: (646) 328-0120  
Facsimile: (646) 328-0121

## ATTORNEY VERIFICATION

WILLIAM R. BENNETT, III, being duly sworn, deposes and says as follows:

1. I am a partner at the law firm of Bennett, Giuliano, McDonnell & Perrone, LLP, attorneys for plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3. The reason this verification is made by an attorney and not by the plaintiff is because the plaintiff is a foreign entity, none of whose officers are presently within this Judicial district

_____
William R. Bennett, III

Z:\Casework\F Cases\F101 Steel Core Trading\Rule B\Verified Complaint-062909.doc

# EXHIBIT 1

| | |
|---|---|
| CONTRACT OF SALES # AR/ST-01<br>DATED 18/06/2008 | КОНТРАКТ № AR/ST-01<br>ОТ 18/06/2008 |

Buyer: **"ARGUS DEVELOPMENTS INC."**
208 H Plaza Centre Building,
3505 Silverside Road,
Wilmington, DE 19801, USA

Firm which is the legal entity under legislation of USA in the person of authorized representative Yakushev V.G., on the basis of a Statute on the one hand, and

Seller: **STEELCORE TRADING LIMITED**
24 Tangerine Street, Belmopan, Belize
Reg. No. 70729

Firm which is the legal entity under legislation of United Belize in the person of director Mr. Erbil Yildiz, acting on the basis of a Statute, on the other hand concluded the present contract as follows:

**Subject of the contract:**
The Seller is obliged to deliver and transfer the property over, and the Buyer is obliged to accept and pay for the goods on FOB basis according to "INCOTERMS-2000".

**Material:**
Prime Steel Billets

**Quantity:** 10,000 mt +/- 5%

**Quality:**
5SP

**Chemical composition:**

According to russian GOST 380-94

**Size:**
125*125 mm.

**Length:**
12000 mm +/-100mm

**Size Tolerance:**
- rhomboidity: max 8 mm
- twist: 2 degree per meter max but not more 10 degrees on full length
- straightness/curvature: not exceed 1,5% of any measured length

**Packing:** In bundles of max 6,0 mt containing maximum 6 pieces per each bundle. Bundles are securely tied at minimum 4 places by steel tape, plus minimum 2 lifting rings per each bundle. Each lifting ring is made out from wire rod 6-7mm and it has 9 turns.

**Invoicing:** Net for net weight, based on mill's actual weight. The cost of packing and marking is included in the price of Goods.

**Marking:** On 1 metal tag affixed on each bundle showing as follows:

Покупатель: **"ARGUS DEVELOPMENTS INC."**
208 H Plaza Centre Building,
3505 Silverside Road,
Wilmington, DE 19801, USA

Фирма, которая является юридическим лицом по законодательству США в лице уполномоченного представителя г-на Якушева В.Г., действующего на основании Устава с одной стороны, и

Продавец: **STEELCORE TRADING LIMITED**
24 Tangerine Street, Belmopan, Belize
Reg. No: 70729

Фирма, которая является юридическим лицом по законодательству Белиза, в лице директора г-на Эрбил Йилдиз действующего на основании Устава, с другой стороны, заключили настоящий контракт о следующем:

**Предмет контракта:**
Продавец обязуется поставить и передать в собственность, а Покупатель принять и оплатить товар на базисных условиях поставки FOB в соответствии с «Международными правилами интерпретации коммерческих терминов» в редакции ИНКОТЕРМС-2000 года.

**Товар:**
Высококачественная литая заготовка

**Количество:** 10000 мт +/- 5 %

**Качество:**
5СП

**Химический состав:**

Согласно российскому ГОСТ 380-94

**Размер:**
125*125 мм.

**Длина:**
12000 mm +/-100 mm

**Отклонение по размерам:**
- ромбичность: максимум 8 мм
- Кручение: 2 градуса на метр максимум, но не более 10 градусов на всю длину.
- прямолинейность/кривизна: не должна превышать 1,5% от любой измеряемой длины.

**Упаковка:** В связках максимум 6,0 мт, содержащих максимум 6 штук. Связки должны быть безопасно связаны минимум в 4 местах стальной лентой. Каждая связка должна иметь минимум 2 строповочных кольца для производства погрузо-разгрузочных работ. Каждое строповочное кольцо изготовлено из стальной проволоки толщиной 6-7 мм и имеет 9 витков.

**Инвойс выставляется:** на чистый вес, который основывается на фактическом заводском весе. Стоимость упаковки и маркировки входят в стоимость Товара.

**Маркировка:** На каждой связке должна быть закреплена одна металлическая бирка, на которой указано:

- Heat number.
- Size.
- Steel grade.
- Producer's name.
- Russia.

Additional colour at the end of each billet: RED.

Origin: Russia

Producer: Novorosmetall

Load port: Novorossiysk port (Shipyard).

Price: USD 1160.00 pmt FOB ST LSD Novorossiysk port.

Value: USD 11600000 +/- 5 %.

Delivery: The whole quantity (10,000mts) to be loadready at Novorossiysk Port by latest 20/07/2008.

Price and payment Terms : As per Addendum No. 1

Arbitration: Any controversies, differences or claims which may arise between the parties out of or in relation to or in connection with this agreement or any breach thereof, shall be solved amicably as far as possible by mutual consent. In case of failure to amicably solve such matters, such things shall be finally settled by arbitration in Sweden in accordance with the arbitration acts currently under force. This agreement shall be governed by and constructed in accordance with the Swedish Law.

Claims : The Buyer has the right to appoint an independent international surveyor (SGS or others) to attend production of the whole quantity under this contract, to check for quality/chemical composition. Surveyors have the right to reject any material which does not correspond to the technical conditions of the contract. The Buyer has the right to appoint an independent neutral surveyor (SGS or others) to attend loading of the cargo/ Fees to be on account of the Buyer.

In case the delivered steel billets is different or deficient from the specification (chemical composition and tolerances detailed above) any claim is to be made against the Seller within 30 days after completion of discharge of steel billets at the discharge port. All justified claims shall be settled with the Buyer within thirty days from the date of Buyer request accompanied by a formal invoice and a survey report by an independent surveyor. However the Seller has the right to re-inspect the deficient steel billets at their own expenses.

Force Majeur: Both parties shall not be held liable for breach of this agreement caused by force majeur such as the event of act of God, war, warlike conditions, blockage, embargoes, revolution, insurrection, mobilization, intervention of civil, naval or military authorities, riots, civil commotion,

- Номер плавки.
- Размер.
- Марка стали.
- Наименование производителя.
- Страна происхождения – Россия.

Дополнительно: один торец каждой заготовки должен быть окрашен в красный цвет.

Происхождение: Россия

Производитель: Новоросметалл

Порт погрузки: Новороссийск порт (ОАО НСРЗ).

Цена: 1160.00 долларов США за мт FOB ST LSD порт Новороссийск.

Стоимость: USD 11600000 +/- 5 %

Поставка: Все количество (10000 мт) должно быть готово к погрузке в порту Новороссийск самое позднее до 20/07/2008.

Цена и условия оплаты: согласно Приложения № 1

Арбитраж: любые споры, разногласия или претензии, которые могут возникнуть между Сторонами в отношении или в связи с этим контрактом или любое нарушение его должны решаться путем дружеских переговоров насколько возможно обоюдное согласие. В случае, если невозможно решить эти споры путем дружеских переговоров, тогда такие споры должны окончательно рассматриваться в арбитражном суде в Швеции в соответствии с действующими арбитражными законами. Этот контракт должен руководствоваться и строится на Законодательстве Швеции.

Претензии: Покупатель имеет право назначить независимого международного сюрвейера (СЖС или других) для их присутствия во время производства всего количества по этому контракту, для проверки качества/химического состава. Сюрвейера имеют право отсепарировать любой материал, который не соответствует техническим условиям контракта. Покупатель имеет право назначить независимого сюрвейера (СЖС или других) для присутствия во время погрузки груза. Стоимость должна быть за счет Покупателя.

В случае если поставленная стальная заготовка не соответствует или отличается от спецификации (химический состав и отклонения указаны выше); тогда Продавцу может быть выставлена претензия в течение 30 дней после окончания выгрузки стальной заготовки в порту выгрузки. Все обоснованные претензии должны быть урегулированы с Покупателем в течение тридцати дней с даты претензий Покупателя, подкрепленной официальным инвойсом и сюрвейерским отчетом, выданным независимым сюрвейером. Однако, Продавец имеет право инспектировать еще раз несоответствующую заготовку за свой счет.

Форс-мажор: Обе стороны не несут ответственность за нарушение этого Контракта по причине форс-мажорных обстоятельств, таких как природные действия, война, военные условия, блокада, эмбарго, революции, восстание, мобилизации, интервенция гражданских,

3

strikes, lockouts, plague or other epidemics, quarantine, fire, flood, typhoon or any other causes beyond the reasonable control of the Buyer /Seller. However, the Seller or Buyer must immediately send to the other party within 15 days by registered air mail a certificate of force- majeur issued by competent authorities evidence thereof.

военно-морских или военных властей, мятежи, гражданские волнения, забастовки, локауты, эпидемии, карантины, пожары, наводнения, тайфуны или любые другие причины, вне контроля Покупателя/Продавца. Однако, Продавец или Покупатель должны немедленно направить другой стороне в течение 15 дней зарегистрированной авиапочтой сертификат о форс-мажоре, выданный компетентными властями как доказательство.

USD – correspondent acc. # 16724000160
BNP Paribas, New York, USA
S.W.I.F.T. – BNPAUS3N
Buyer"s Bank:
BNP Paribas (Suisse) SA, Geneva, SWITZERLAND
S.W.I.F.T. – BPPBCHGG
IBAN: CH6608686001084234001

SWIFT CODE: AIZK LV22
BENEFICIARY'S BANK: JSC AIZKRAUKLES BANK,
Riga, Latvia
BENEFICIARY'S ACCOUNT:.
LV 84 AIZK 0001 1401 0542 1
BENEFICIARY: STEELCORE TRADING LIMITED

Signed for and on behalf of the Buyer:
Подписано от имени и по поручению Покупателя:

Signed for and on behalf of the Seller:
Подписано от имени и по поручению Продавца:

ADDENDUM No. 1
To the contract No. AR/ST-01 dated 18/06/2008

**Price:** USD$ 1160,00 - PMT per metric ton FOB Stowed LSD Novorossiysk Port. (Shipyard).
The price is generated in view of lumpsum unitary customs registration of all party (10000 +/-5 %) of the goods under the contract. In case of if the Buyer instructs the Seller to make shipments of the goods under the contract more than one party; in that case the Buyer refunds the Seller, suffered by him on additional customs registration of the goods. The reimbursement is made by the Buyer after the termination of shipment of the goods under the contract from port of shipment on the basis of the invoice of the Seller and a calculation of charges on customs registration.

**Payment Terms:**
The Buyer shall effect payment for the goods in US dollars currency payable as follows:

100% of total value of the goods will be paid by direct banking transfer by four lots within 3 banking days after presentation the following documents:

1. 5% of the amount of the goods after signing of the contract and after presentation of the following documents:
   a) Signed / stamped commercial invoice covering 5% of the total value of goods in triplicate.

2. 47,5% of total contract value should be paid by the Buyer after the delivery of 5000 +/-5% ton of the goods to the port and after presentation of the following documents by the Seller:
   a. Signed/stamped invoice which is covering of corresponding amount - in triplicate;
   b. FCR (forwarder's certificate of receipt) issued by forwarding company NOVOFOR LTD according to the instructions of the Buyer and covering 5000 +/-5% ton of the goods.

3. The balance payment of total contract value should be paid by the Buyer after the delivery of whole quantity 10000 +/-5% ton of the goods to the port and after presentation of the following documents by the Seller:
   a. Signed/stamped invoice which is covering of corresponding amount - in triplicate.
   b. FCR (forwarder's certificate of receipt) issued by forwarding company NOVOFOR LTD according to the instructions of the Buyer and covering 5000 +/-5% ton of the goods.

After completion of a vessel's loading the Seller grants to the Buyer the following documents:
a) 3 original plus 3 copies Bill's of Lading or of Mate's Receipts issued accordingly the Buyer's instructions.
b) Mill's test certificates issued by the Producer and showing the chemical composition for each heat.
c) Certificate of origin issued by Russian Chamber of Commerce and showing that the goods are Russian origin - 1 original and 2 copies.
d) Packing list which is showing description of goods, quantity of bundles, total net weight, total gross weight and marking of the goods - in triplicate.

ПРИЛОЖЕНИЕ № 1
К контракту № AR/ST-01 от 18/06/2008

**Цена:** 1160,00 долларов США за мт ФОБ ST LSD с укладкой порт Новороссийск. (ОАО НСРЗ).
Цена сформирована с учетом единовременного однократного таможенного оформления всей партии (10000 +/-5%) товара по контракту. В случае если Покупатель инструктирует Продавца производить отгрузки товара по контракту из порта отгрузки более чем одной партией, в таком случае Покупатель возмещает Продавцу расходы, понесенные последним на дополнительное таможенное оформление товара. Возмещение расходов производится Покупателем после окончания отгрузки товара по контракту из порта отгрузки на основании счета Продавца и калькуляции расходов на таможенное оформление.

**Условия оплаты:**
Покупатель должен произвести оплату за товар в долларах США как указано ниже:

100% стоимости товара оплачивается прямым банковским переводом тремя частями в течение 3-х банковских дней по предоставлении следующих документов как указано ниже:

1. 5% от стоимости товара по контракту после подписания контракта и по предоставлению следующих документов:
   а) Подписанный/с печатью коммерческий инвойс в трех экземплярах, покрывающий 5% стоимости товара - 3 экземпляра.

2. 47,5% от стоимости товара - после доставки партии товара 5000 +/- 5% тонн в порт и предоставлении следующих документов:
   а). Подписанный/с печатью коммерческий инвойс, покрывающий указанную сумму - 3 экземпляра.
   b). FCR - выпущенный экспедиторской компанией NOVOFOR LTD согласно инструкций Покупателя, покрывающий 5000 +/- 5%.

3. Балансовый платеж от стоимости товара - после доставки всей партии товара 10000 +/- 5% тонн в порт и предоставления следующих документов:
   с). Подписанный/с печатью коммерческий инвойс, покрывающий указанную сумму - 3 экземпляра.
   d). FCR - выпущенный экспедиторской компанией NOVOFOR LTD согласно инструкций Покупателя, покрывающий 5000 +/- 5%.

После отгрузки товара на судно Продавец предоставляет Покупателю следующие документы:
а) 3 оригинала и 3 копии коносаментов или штурманских расписок, оформленных согласно инструкциям Покупателя.
b) Заводские сертификаты качества, выданные заводом производителем, с указанием фактического химического состава по каждому номеру плавки.
с) Сертификат происхождения, выданный Торгово-Промышленной Палатой России, подтверждающий, что товар имеет российское происхождение - 1 оригинал и 2 копии.
d) Упаковочный лист, содержащий наименование товара,

4

5

In case the Buyer fails to pay in time showed in the present contract should to pay to the Seller a fine for each day of the delay, at rate 0,1% from the amount which was unpaid. But this fine should be not more than 10% from total amount of the present contract. The date of the payment's effect is date of earning of the amount on the Seller's account.
In case of delay in deliveries, the Seller : for each day of delay, shall pay to Buyer the 0,1 % of the total amount of the contract/Spec not fully delivered, but not more than the 10 % of the amount of that contract/spec.

Insurance:      To be covered by the Buyer.

Storage:

The Seller is to grant the Buyer 45 days of free time after arrival of each lorry/wagon with the goods to the loading port. Each day the Seller should send written information (by Fax or E-mail) to the Buyer about quantities available for shipment, indicating number of bundles, gross and net weight, name and/or of berth in Novorossiysk port where the goods are stored, without any costs for the Buyer.

After the signing of the present contract, the Seller shall inform The Buyer about the quantity of produced/ dispatched to the port goods including the gross/net weight and number of bundles.
In case the Buyer fails to ship the contracted goods within 45 days of free storage time, the Seller is entitled to charge storage cost to the Buyer at rate of:

- USD 0.15 per mt per day from 46th until 90th day inclusive
- USD 0.51 per mt per day if over 90th day

In case of delay in delivery of the goods by the Seller after the date specified in item "Delivery" of the present contract, the date started of readout of storage of the goods will pay off as follows:
«Date of storage commencement» = «date of delivery of the lorry/car with the cargo in port» + «quantity of days of delay of delivery of the goods».
In case of storage time exceeds the norm all invoices related to the storage time exceeding the norm should be submitted to the Buyer within 30 days of B/L or Mate's Receipt date.

Shipping Terms:
(1) The Seller to submit to the Buyer a 15 days approximately notice of cargo readiness to the port then to advise officially the buyers of the final date of readiness of the cargo for the loading, The Seller is to give the Buyer, together with the notice of cargo readiness, where applicable, also details of berth restrictions, if any, i.e. LOA, Beam, Draft, Airdraft, etc., as well as laycan applicable. The Seller will guarantee one safe / always accessible / always afloat berth.

(2) The Buyer is to nominate carrying vessel, which is to be single-decker bulk carrier or suitable open tween-decker (in which case loading into lower holds only) with no stanchions / obstructions. The ship to be fully suitable for loading the

количество связок, вес товара нетто и брутто и маркировку товара – 3 экземпляра.

В случае если Покупатель не оплатит товар в срок, указанный в настоящей Спецификации, он уплачивает Продавцу штраф в размере 0,1% от неоплаченной суммы за каждый день просрочки платежа, но не более 10 % от общей суммы настоящего контракта. Датой платежа считается дата зачисления суммы платежа на счет Продавца.
В случае задержки поставки товара, Продавец оплачивает Покупателю штраф в размере 0,1% от стоимости недопоставленного товара за каждый день задержки поставки, но не более 10% от суммы контракта.

Страховка: за счет Покупателя

Хранение:

Продавец предоставляет Покупателю 45 дней бесплатного хранения после прибытия каждого грузовика/вагона с товаром в порт отгрузки. Продавец ежедневно направляет письменную информацию (факсом или E-mail) Покупателю о количестве товара, готового к отгрузке, указывая количество связок, вес нетто и брутто, название и/или номер причала в порту Новороссийск, где складируется груз без расходов со стороны Покупателя.
После подписания настоящего контракта Продавец будет информировать Покупателя о количестве произведенного/отгруженного в порт товара, включая вес нетто/брутто и количество связок.
Если Покупатель не вывезет законтрактованный товар в течении 45 дней бесплатного хранения, Продавец взимает с Покупателя плату за хранение по следующим расценкам:

- USD 0,15 за тонну за день начиная с 46 дня по 90 день включительно.
- USD 0:51 за тонну за день свыше 90 дней.

В случае задержки поставки товара Продавцом после даты, указанной в пункте «Поставка» настоящего договора, дата начала отсчета хранения товара будет рассчитываться следующим образом:
«Дата начала хранения» = «дата завоза грузовика/вагона с грузом в порт» + «количество дней просрочки поставки товара».
В случае сверхнормативного хранения товара все инвойсы за сверхнормативное хранение должны быть представлены Покупателю в течение 30 дней с даты подписания коносамента или штурманской расписки.

Условия отгрузки:
(1) Продавец должен предоставить Покупателю приблизительно за 15 дней нотис о готовности груза в порту и сообщить официально Покупателю окончательную дату готовности груза к погрузке. Продавец должен предоставить Покупателю вместе с нотисом о готовности груза, все подробности об ограничениях причала, если они есть, т.е. длина, ширина, драфт и т.д, а также лейкен. Продавец будет гарантировать один безопасный/всегда доступный/всегда в наличии причал.

(2) Покупатель будет номинировать судно для перевозки, которое может быть однопалубным или подходящим открытым двухпалубным (в таком случае погрузка должна осуществляться только в нижние трюмы) без каких-либо

6

subject material. The ship has the option to carry other part cargoes. Which will not interfere with the loading operations of the above, order in any case enough space to be left to the stevedores for as proper stowage for the cargo. Vessel's full particulars to be given including:

- Vessel's name
- Flag, year of built
- Deadweight, fully laden draft, expected arrival / sailing draft at loading port
- Length overall, beam
- Number of holds, hatches and hold / hatch sizes.
- Tanktop strength
- Classification society and P+I Club
- Number of holds / hatches allocated to loading subject material and tonnage per hatch hold.

The cargo to be distributed between holds / hatches in accordance with master's requirements and instructions.

(3) The Seller is to submit the vessel to the port authorities for their acceptance then final confirmation to be declared within 24 hours. In case the vessel will not be accepted by the port of authorities, providing that the ship's characteristics will comply with all parameters of this clause, the running of the days of free time for nominating the vessel will cease and the Seller is to nominate a new lay-can.

Owners / Master to give following arrival notice: 5/3 days approximate notice of arrival at loading port, 48/24 hours definite notice of arrival at loading port.

(4) Notice of Readiness to be tendered and accepted any time day or night, Sundays and Holidays included. Vessel is to be an arrived ship before NOR given, i.e. arrived within the port limits. NOR may be given whether in port, berth, free pratique, customs cleared or not. Time starts to be count at 14.00 Hrs if NOR is given within office hours before noon or 08.00 Hrs next working day if NOR is given within office hours afternoon. Time used prior to commencement of lay-time to count if used.

(5) CQD terms with detention clause due to lack cargo or documentation.
Stevedores are to load, lash and secure the material under Master's authority and instructions. Any stevedores damages are to be settled directly between the owners, and the stevedores. Such damages is to be reported immediately but latest 24 hours from occurrence in writing, both to stevedores and to the Seller, stating full details of damage and how caused, failing that no claim will be no longer accepted. The Seller is to finally ultimately responsible in case no settlement can be reached between owners and stevedores within 6 months of the damage inflicted including but not limited to the repairs as well as any time lost until damages are repaired up to Master and/or Classification Society's satisfaction.

заграждений. Судно должно полностью подходить под перевозку товара. Судно имеет право на перевозку другого груза, который не будет мешать погрузочным операциям вышеуказанного порядка, в любом случае, должно быть оставлено достаточно место для стивидоров для должной укладки груза. Полное описание судна будет предоставлено, включая:

- название судна
- флаг, год постройки
- дедвейт, полный драфт в грузу, драфт по прибытию/отплытию в порту погрузки
- длина, ширина
- количество трюмов, люков и размеры трюмов/люков
- tanktop strength
- классификационное общество и P&I club
- номера трюмов/люков предназначенных для погрузки этого товара и тоннаж для каждого трюма.

Груз должен распределяться между трюмами/люками в соответствии с инструкциями и требованиями капитана.

(3) Продавец должен направить описание судна властям порта для его подтверждения, затем окончательное подтверждение должно быть предоставлено в течение 24 часов. В случае, если судно не принимается властями порта, при условии, что характеристики судна будут соответствовать всем параметрам этой статьи контракта, и дни для номинации судна истекут, тогда Продавец должен будет назначить новый лейкен.

Судовладельцы/капитан должны за 5/3 дня до подхода судна подавать нотис о приблизительном дне прибытия в порт погрузки, и за 48/24 часа точный нотис о прибытии в порт погрузки.

(4) Нотис должен подаваться и акцептоваться в любое время суток включая выходные и праздничные дни. Судно должно считаться прибывшим до подачи нотиса, т.е. прибывшим в пределы порта. Нотис должен подаваться в порту или нет, у причала или нет, в свободной практике или нет, после таможенной очистки или нет. Время должно считаться с 14:00 часов, если нотис дан в рабочие часы до полудня или с 08:00 часов следующего рабочего дня, если нотис дан в рабочие часы после полудня. Время, используемое до начала сталийного времени, считается - если использовано.

(5) Условия CQD с оговоркой о задержке судна вследствие отсутствия груза или документации.
Стивидоры должны укладывать груз под руководством капитана и согласно его указаниям. Любые повреждения, причиненные стивидорами должны решаться напрямую между судовладельцами и стивидорами. О таких повреждениях необходимо сообщать немедленно, но самое позднее спустя 24 часа после происшествия в письменном виде как стивидорам так и Продавцам, с указанием всех деталей повреждения и причины, при несоблюдении этих требований претензия больше не будет приниматься. Продавцы будут полностью ответственными в случае, если согласие не будет достигнуто между судовладельцами и стивидорами в течение 6 месяцев с момента повреждения включая, но не ограничиваясь ответственностью за ремонт, а также за простой судна в связи с таким ремонтом – до момента его

(6) Demurrage rate to be declared at the time of the nomination of the vessel. Free despatch.

(7) The cargo to be loaded by the stevedores free of risk and expenses to the Buyer by means of shore cranes only.

(8) Demurrage is payable by the Seller to the Buyer based on time sheet including relevant statement of facts, nor to be countersigned by master / chief officer, ship's agent and the seller's representatives at loading port. Demurrage to be settled in USD between the Seller and the Buyer within 20 days after claim submission.

(9) All dues/taxes/wharfages/freight taxes of the vessel are on Buyer's account, all dues/taxes/wharfages on material to be for the Seller's account.

The Seller is to guarantee one loading berth only, in case of second loading berth then shifting expenses to be for the Seller's account.

(10) Overtime, if any, to be for the party ordering same, but Master / Officers / Crew, overtime always to be for owner's account. Overtime, if any ordered by the port authority to be for the Seller's account.

11) The vessel's agent at the port Novorossiysk — Messrs JSC Novofor - (tel. +78617606953; e-mail: agency@novofor.ru).

(6) Ставка демерреджа будет заявлена во время номинации судна. Без диспача.

(7) Груз будет грузиться стивидорами без риска и расходов для Покупателя только с помощью береговых кранов.

(8) Демерредж оплачивается Продавцом Покупателю на основании Time Sheet, включая соответствующий Statement of Facts, нотис должен подписываться капитаном/портом, судовым агентом и представителями Продавца в порту погрузки. Демерредж должен рассчитываться в долларах США между Продавцом и Покупателем в течение 20 дней после предоставления претензии.

(9) Все пошлины/налоги/причальные сборы/налоги на фрахт судна — за счёт Покупателя, все пошлины/налоги/причальные сборы на материал, — должны быть за счет Продавца.

Продавец гарантирует только один причал для погрузки, в случае, если будет использован второй причал, тогда стоимость перешвартовки будет за счет Продавца.

(10) Сверхурочное время, если будет, должно быть за счет стороны, заказывающей его, но относительно сверхурочного времени капитана/служащих/команды — всегда за счет судовладельца. Сверхурочное время, если оно будет заказано властями порта, должно оплачиваться Продавцом.

(11) Судовой агент в порту Новороссийск — ЗАО «Новофор» - (тел. +78617606953; e-mail: agency@novofor.ru.




Signed for and on behalf of the Buyer:
Подписано от имени и по поручению Покупателя:

Signed for and on behalf of the Seller:
Подписано от имени и по поручению Продавца:

05/06/08
ADDITION NO. 1
TO THE CONTRACT OF SALES # AR/ST-01
DATED 10/06/2008

**Buyer:** "ARGUS DEVELOPMENTS INC."
208 H Plaza Centre Building,
3505 Silverside Road,
Wilmington, DE 19801, USA

Firm which is the legal entity under legislation of USA in the person of authorized representative Yakushev V.G., on the basis of a Statute on the one hand, and

**Seller:** STEELCORE TRADING LIMITED
24 Tangerine Street, Belmopan, Belize
Reg. No. 70729

Firm which is the legal entity under legislation of United Belize in the person of director Mr. Erbil Yildiz, acting on the basis of a Statute, on the other hand concluded the present addition as follows:

1. The Seller and the Buyer both called as the Parties have agreed to change the price under the contract and to fix it as 900 US Dollars for 1 metric ton on the basis of FOB ST LSD port Novorossiysk (Shipyard).

All other terms and conditions of the contract are remaining without changing.

Signed for and on behalf of the Buyer:
Подписано от имени и по поручению Покупателя:

---

05/06/08
ДОПОЛНЕНИЕ № 1
К КОНТРАКТУ № AR/ST-01
ОТ 10/06/2008

**Покупатель:** "ARGUS DEVELOPMENTS INC."
208 H Plaza Centre Building,
3505 Silverside Road,
Wilmington, DE 19801, USA

Фирма, которая является юридическим лицом по законодательству США в лице уполномоченного представителя г-на Якушева В.Г., действующего на основании Устава с одной стороны, и

**Продавец:** STEELCORE TRADING LIMITED
24 Tangerine Street, Belmopan, Belize
Reg. No. 70729

Фирма, которая является юридическим лицом по законодательству Белиза, в лице директора г-на Эрбиля Йилдиза, действующего на основании Устава, с другой стороны, заключили настоящее дополнение к контракту о следующем:

1. Продавец и Покупатель, вместе именуемые как Стороны договорились изменить цену товара по настоящему контракту и установить её как 900 долларов США за 1 тонну на условиях ФОВ порт Новороссийск (ОАО НСРЗ).

Все остальные условия настоящего контракта остаются без изменений.

Signed for and on behalf of the Seller:
Подписано от имени и по поручению Продавца: